**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Frank MORRIS, a/k/a, Castudarrel
Cunningham, Defendant-Appellant.**

**No. 40224.**

Missouri Court of Appeals,
Eastern District,
Division One.

July 17, 1979.

Charles H. Mostov, Asst. Public Defender, Michael M. Frank, St. Louis, Howard E. McNier, Clayton, for defendant-appellant.

Thomas M. Daly, Asst. Circuit Atty., St. Louis, John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant Frank Morris, also known as Castudarrel Cunningham, was found guilty by a jury of stealing from a person. The defendant was sentenced under the Second Offender Act to ten years in the custody of the Department of Corrections. Defendant appeals.

The evidence shows that Eugene and Canoy Bueneman resided in the 4900 block of Washington Avenue, City of St. Louis, and operated their home as a boarding house. During the evening of August 6, 1977, Mrs. Bueneman, Mrs. Hays and a third unidentified female resident of the Bueneman home were seated on the front porch. At that time defendant and another man, known to defendant as Bumpy Jay, approached the

women. The porch was some four feet above the street level. Bumpy Jay walked up the steps from the sidewalk to the porch and engaged the women in conversation. Defendant remained on the sidewalk but within reach of the porch. He said nothing. While Bumpy Jay spoke he seemed to wink and nod to defendant in an effort to signal or communicate surreptitiously. The women were annoyed and frightened by this conduct. Mrs. Bueneman went inside the house and roused her husband who had been sleeping. Mr. Bueneman came to the porch door and asked the two men to leave. As Bumpy Jay departed, walking down the steps from the porch, defendant grabbed Mrs. Hays' purse and both fled.

Shortly after this occurrence St. Louis Police Department Officers William Abel and Terrance Sloan, who were driving east in the 4900 block of Delmar, observed the defendant and his companion running across a post office parking lot. The parking lot abutted a vacant lot on Washington Avenue which the two men had crossed. Defendant and Bumpy Jay were running together, only a foot to four feet apart. The two ran across the street within twenty feet of the officers' marked police vehicle. Defendant was carrying Mrs. Hays' purse.

Officer Abel, who was driving, stopped the police vehicle while Officer Sloan got out. Officer Sloan, who was in uniform, identified himself as a police officer and commanded defendant and his companion to halt. This command was answered by a shot from Bumpy Jay's revolver, whereupon the two men ran in different directions.

Defendant ran down an alley and into a vacant lot. The lot was covered with weeds and defendant lay among them in an effort to conceal himself. Defendant was quickly apprehended by Officer Sloan. The officer found Mrs. Hays' purse in the lot three feet from where defendant hid. The purse contained $1.33 and a few of Mrs. Hays' personal possessions. When asked his name, defendant responded that he was Frank Morris. This name was an alias.

Officer Abel chased Bumpy Jay but was unable to apprehend him.

At trial defendant testified on direct examination that he had been convicted of the fraudulent use of a credit card, burglary and stealing from a dwelling. These convictions resulted in a twenty-five year suspended sentence on condition of five years probation. Defendant also testified that he understood that if he were convicted of another offense his probation would be revoked. However, the trial court precluded defendant from testifying that if his probation were revoked he faced twenty-five years imprisonment because his sentence would be reimposed.

Defendant's first contention is that the trial court erred by prohibiting admission of the length of his suspended sentence. We do not agree.

Defendant, in maintaining his innocence at trial, testified that his companion took Mrs. Hays' purse, that he, defendant, fled the Bueneman residence only because he feared his probation would be revoked and that Officer Sloan was mistaken as to where the purse was found. Defendant contends that he had a right to inform the jury that he faced a twenty-five year jail term if his probation were revoked because this bore directly on his state of mind at the time the crime was committed. Defendant also argues that it explains why he fled and accounts for why he gave a false name when arrested. Defendant's premise is that because he faced the possibility of twenty-five years imprisonment he would not commit another crime and would reasonably fear trouble with the police. Therefore, defendant argues, it was a prejudicial error to exclude evidence of the length of his suspended sentence.

■ The relevancy of evidence depends on whether the evidence sought to be introduced tends to prove or disprove a fact in issue, or to corroborate evidence which is relevant and which bears on the principal issue. *State v. Walden,* 490 S.W.2d 291 (Mo.App.1973). It is within the sound discretion of the trial court to exclude evidence when its probative value is substantially outweighed by its prejudicial effect.

*State v. Johnson,* 539 S.W.2d 493, 517 (Mo. App.1976); *State v. Morrow,* 541 S.W.2d 738 (Mo.App.1977). In this context prejudice means more than damage to the opponent's case. Evidence that the facts are contrary to a party's contentions is always damaging to his cause; but that cannot be ground for exclusion. "What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." McCormick, Evidence 439 (2d ed. 1972). Because of the trial court's superior vantage for balancing the probative value and prejudical effect, it is vested with broad discretion in admitting or rejecting evidence. *State v. Love,* 546 S.W.2d 441 (Mo. App.1977).

█ Wigmore argues that the better rule is to freely admit explanations of flight, leaving to the jury the plausibility of the explanation. Wigmore, Evidence § 276 (3d ed. 1940). In general we agree. However, we cannot say that the trial court abused its discretion in prohibiting defendant from testifying as to the length of his suspended sentence. Defendant was allowed to testify that he had previously been convicted, that he was on probation when the crime was committed and that he knew if he committed another crime his probation would be revoked. Thus, defendant was still able to argue that he never formed the intent to steal, that he fled the scene of the crime and that he gave a false name to the police because he feared his probation would be revoked. In so doing the trial court prohibited admission of the fact that defendant would effectively serve twenty-five years imprisonment for the theft of a purse which contained only $1.33. The prejudicial effect of this evidence could have been considerable. The trial court did not abuse its discretion in determining that the prejudicial effect outweighed the evidence's probative value. Therefore, excluding its admission into evidence was proper.

The defendant's second allegation is that the trial court erred by allowing the prosecutor to delve into defendant's reputation by cross-examining defendant and thereby eliciting testimony concerning his prior convictions. We do not agree.

█ Defendant has failed to preserve this point for our consideration. There was no objection made by defendant or relief sought at the time the alleged error occurred. Therefore, this point need not be considered. *State v. Drake,* 514 S.W.2d 653 (Mo.App.1974).

█ Furthermore, defendant took the witness stand in his own behalf. A defendant who testifies is subject to impeachment. In this respect the defendant is to be treated like any other witness. *State v. Martin,* 530 S.W.2d 447, 452. Since defendant was a convicted felon his convictions could be used to attack his credibility. *State v. Washington,* 383 S.W.2d 518 (Mo.1964). Therefore, the trial court did not err in permitting the prosecutor to elicit the nature, date and places of the previous convictions. *State v. Sullivan,* 553 S.W.2d 510 (Mo.App. 1977).

Defendant's next contention is that the trial court erred by failing to strike the prosecutor's remarks in closing argument that there were other witnesses which the defendant could have called. Defendant also contends the court erred by failing to admonish the jury to disregard these remarks. These contentions are without merit.

█ It should be noted that in entering his objection defense counsel failed to request the court to admonish the jury to disregard the prosecutor's remarks about the availability of other witnesses. Therefore, the failure to admonish the jury was not preserved and will not be considered by this court. Rule 84.13(a) as made applicable by Rule 28.18; *Anderson v. Independent Mutual Fire Insurance Company,* 453 S.W.2d 609, 614 (Mo.App.1970).

Turning to whether the trial court erred in failing to strike the prosecutor's reference to the availability of other witnesses we are conscious that any impropriety of his remarks and the consideration of their effect on the merits must be made in light of the facts of this case. *State v. Knapp,*

534 S.W.2d 465, 568 (Mo.App.1975). During cross-examination of the defendant the prosecutor elicited the defendant's claim that the purse had not been found near him in the weed covered lot, but brought there by Officer Abel from another location. Defendant explained that while Officers Abel and Sloan were not lying in testifying that the purse was found next to defendant, they were mistaken. In contradiction to the testimony of the two arresting police officers, defendant claimed he was not running alongside Bumpy Jay, that he was not with Bumpy Jay when a shot was fired at the officers, and that Bumpy Jay, not defendant, carried the purse. Defendant also testified that the police car had almost hit him while he ran for a bus and further, that Mrs. Bueneman was mistaken in her identification of defendant as the man who had taken the purse. Within this context the prosecutor, Mr. Daly, made the following comments during closing argument:

MR. DALY: . . . Call to mind the fact, according to his (defendant's) story, he is going to catch a bus. There are other people out there on that street. Other police officers come on the scene. All these people conspiring.

MR. MOSTOV: Objection, Your Honor, to all these people. The only people in evidence are police officers.

THE COURT: Well, the jury will remember the evidence and follow the instructions of the court. You have two minutes left, Mr. Daly.

MR. DALY: Thank you, Your Honor. Are all these people conspiring to put a case on (against defendant)?

▪ In light of the context in which the remarks were made the prosecutor was not inferring that people on the street could have been called as witnesses. Rather the prosecutor was arguing that it was incredible to suggest that the occupants of the Buenemans' porch and the police officers would all give false testimony in order to convict the defendant.

Furthermore, even if our interpretation of the above quotation is incorrect, there was no prejudicial error committed because the prosecutor may refer to the defendant's failure to produce or offer evidence. *State v. Jenkins,* 516 S.W.2d 522, 528 (Mo.App. 1974). Therefore, defendant's contention that an impermissible inference resulted from the prosecutor's comments is without merit.

The defendant's final complaint is that the trial court erred in giving the jury instructions MAI–CR 7.70 and MAI–CR 2.10.

Instruction MAI–CR 7.70 modified by 2.12, submitted by the prosecutor is as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on August 6, 1977, in the City of St. Louis, State of Missouri, the defendant acting with another took from the actual and immediate physical control of Marguerite Hays a purse containing personal papers and one dollar and thirty-three cents lawful money of the United States, and

Second, that the property was taken by the defendant acting with another with the intent to permanently deprive Marguerite Hays of her use of such property and to convert it to the use of the defendant and another, and

Third, that the property was taken by the defendant without the consent of the owner, and

Fourth, that the defendant acted either alone or knowingly and with common purpose together with another in the conduct referred to in the above paragraphs, then you will find the defendant guilty of stealing from a person.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense.

▪ Defendant argues that giving the instruction was error because the state presented no evidence that defendant knowingly and with a common purpose acted with another for the purpose of stealing the purse. We do not agree. The evidence

shows: 1) defendant and Bumpy Jay approached the Bueneman porch together; 2) Bumpy Jay went to the top of the stairs and engaged in idle conversation while defendant remained on the sidewalk near the porch; 3) as Bumpy Jay spoke he winked and nodded in defendant's direction, and 4) after the two were asked to leave, Bumpy Jay started down the steps and defendant grabbed the victim's purse. This evidence was such that the jury could infer that defendant and his companion were acting together for a criminal purpose. *State v. Nichelson*, 546 S.W.2d 539 (Mo.App.1977).

Defendant alleges it was error for the trial court to give MAI–CR 2.10 because he had no notice that he was being tried for acting with another in stealing Mrs. Hays' purse. Instruction MAI–CR 2.10 reads:

All persons are guilty who knowingly act together with the common purpose of committing an offense, or who knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance of the offense is the act of each of them.

The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence.

We find defendant's contention to be meritless. The information filed in this case states "[T]hat Frank Morris . . . acting with another . . . did unlawfully and feloniously steal. . . ." Therefore, defendant was informed that he was charged with the offense regardless of whether he was a principal in the first or second degree. The evidence at trial was strong that defendant actually took Mrs. Hays' purse. It was not error to so inform the jury. Judgment affirmed.

SNYDER, P. J., and SMITH, J., concur.