STATE of Missouri, Respondent,

v.

David TAYLOR, Appellant.

David TAYLOR, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18754, 20395.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 20, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 11, 1996.

Application to Transfer Denied
Oct. 22, 1996.

Emmett D. Queener, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Assistant Attorney General, Jefferson City, for respondent.

PREWITT, Judge.

Following jury trial, Appellant was convicted of murder in the second degree and sentenced to life in prison. He appeals from that conviction. Thereafter Appellant filed a Rule 29.15 motion seeking to vacate the conviction. Following an evidentiary hearing, the motion was denied. Appellant also appeals from that denial. The appeals were consolidated here, pursuant to Rule 29.15(*l*).

Appellant presents two points relied on. The first point claims error in the criminal trial and the second point claims error in denying his Rule 29.15 motion. For his first point, Appellant contends that the trial judge erred in excluding evidence of his intoxication on the evening that the victim was killed, "in that evidence of [Appellant's] intoxication was offered to explain his conduct on the night [the victim] was fatally injured, and not his state of mind or whether he acted knowingly." Appellant contended that the death was an accident.

Appellant and James Booe had been co-workers and occasionally drank together. On the night in question Appellant was experiencing car trouble and, after purchasing some beer, went to Booe's house to work on his car. Neither his wife nor his mother would allow him to drink where they lived.

Appellant intended to use Booe's equipment to repair his car. Booe was not there when Appellant arrived, but came home later. On two occasions Appellant left to buy liquor or soda to mix with the vodka that he and Booe were drinking. They had also consumed some beer.

At some point during the evening a neighbor was asked to assist in jump-starting the car. The neighbor testified at the trial that Booe was intoxicated. Appellant's counsel intended to elicit the neighbor's testimony establishing that Appellant was also intoxicated but did not because of the trial court's ruling excluding evidence of Appellant's intoxication.

Appellant testified that later that evening he and Booe were drinking and watching television inside Booe's house. Booe brought up the subject of sex and mentioned that since Appellant was married he did not have to worry about finding someone with whom to have sexual intercourse. Booe indicated he would like to have sex with Appellant. He took his penis out of his pants and came toward Appellant. A scuffle ensued and Appellant picked up a knife he had previously used while repairing his car, and kicked Booe, who fell. Appellant said that Booe fell upon the knife, suffered a knife wound in his neck and died quickly.

Approximately three hours later Appellant called the police and eventually gave a statement in which he said he had "poked" Booe with a knife. A knife with a portion of its blade broken was found approximately a block away from Booe's house. The missing portion of the blade was eventually discovered in Booe's dog, which had been howling on the night in question. In both his statement to police and at trial Appellant claimed he did not know how the blade became lodged in the dog.

Appellant wanted evidence of his intoxication admitted to explain his conduct both before and after the victim's death. He sought to show that the reason he did not leave when sexual advances were first made was because he was not thinking clearly due to intoxication. Additionally, Appellant wanted evidence of his intoxication admitted to explain why he delayed in calling an ambulance or police, why he did not attempt to or was unable to prevent Booe from falling on the knife, and why he could not explain the knife wound to the dog. He also claims his intoxication was relevant to explain the language used in some of the statements he made to the police. The prosecutor argued to the jury that Appellant's conduct immediately after the incident showed that he had a consciousness of guilt and, in effect, he was trying to avoid the charge.

Late in the afternoon of the first day of trial the State rested and the defense then sought to call its first witness, the neighbor who aided Appellant and the victim in jump-starting Appellant's car. Appellant wanted to have the witness testify as to his and the victim's intoxication. The prosecuting attorney stated that he had an "objection" to this witness that he wished to make. Relying on *State v. Erwin*, 848 S.W.2d 476 (Mo. banc),

*cert. denied,* 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993), decided shortly before the criminal trial, the prosecutor urged the trial court to exclude any evidence of Appellant's intoxication.

The trial court, after hearing initial comments by counsel regarding *Erwin's* effect, agreed to take the matter up the following morning before the testimony of Appellant's first witness.

The following morning, the prosecutor made what he referred to as a "motion in limine." After further discussion the trial court stated it would sustain "the State's motion in limine to limit any testimony about the state of intoxication on the part of the defendant." Appellant's counsel then made an offer of proof which was refused. The State argues that the court's ruling was on a motion in limine, which is interlocutory only and not subject to appellate review. *See State v. Wald,* 861 S.W.2d 791, 794 (Mo.App. 1993).[1]

■ The State contends that to preserve the issue Appellant should have offered the evidence. The State objected and later made its "motion in limine" after Appellant announced he wished to call the witness. The trial court made its ruling just before the witness testified. His testimony was very short. Nothing occurred after the ruling to indicate a basis for the court to change the ruling. *See* 22 WILLIAM A. SCHROEDER, MISSOURI PRACTICE, MISSOURI EVIDENCE § 103.4 (1992) (explaining that in limine rulings are interlocutory because trial court may wish to reconsider at the time evidence is actually offered). *See also Pollock v. Searcy,* 816 S.W.2d 276, 277 (Mo.App.1991) (holding voir dire issue properly preserved where issue was raised just before voir dire commenced and there was nothing to indicate the trial court might or would have changed its ruling).

The trial court might have been offended had Appellant attempted to elicit testimony contrary to the ruling thereafter in front of the jury. That could have been construed as an attempt to circumvent the court's determination. Appellant did all he could reasonably have been expected to do to preserve the point and it will be considered on the merits.

■ *Erwin* carefully considers the history of evidence of voluntary intoxication in Missouri, and concludes that such evidence is admissible in "rare situations." 848 S.W.2d at 482. Evidence of intoxication is not admissible to show that a defendant did not have the necessary mental state due to intoxication. *Id.* However, if evidence of voluntary intoxication is relevant on other issues it may be admitted. *State v. Gary,* 913 S.W.2d 822, 827 (Mo.App.1995).[2]

Here the State used the circumstances of the evening in its attempt to establish Appellant's mental state at the time of the alleged offense. The State argued Appellant's failure to call the police or an ambulance contradicted Appellant's account of the incident as an accident. The State similarly questioned Appellant's failure to leave when the victim began making sexual advances toward him.

Appellant wanted to rebut the inferences the State sought to draw from his conduct after the victim's death by showing that it was not caused by a culpable mental state or consciousness of guilt, but, at least in part, by intoxication. Appellant wished to explain why he did not leave after the victim suggested they have sex by testifying that he was not thinking clearly because of his intoxication.

Evidence of Appellant's intoxication also related to the issue of Appellant's credibility. Appellant wanted, but was not allowed, to explain that partly due to his intoxication he made statements to the police that he would

---

1. BLACK'S LAW DICTIONARY 1013 (6th ed. 1990) defines a motion in limine as "[a] pretrial motion requesting court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to moving party that curative instructions cannot prevent predispositional effect on jury."

2. Section 562.076 was amended after Appellant's trial to include language providing that evidence "that a person was in a voluntarily intoxicated ... condition may be admissible when otherwise relevant on issues of conduct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense." Section 562.076.3, RSMo 1994.

not have made otherwise and could not recall certain things that had occurred, such as how the knife blade came to be in the dog.

In closing argument, the State argued that Appellant's inability to explain certain circumstances and statements resulted from his lack of truthfulness. The State asserted that certain things Appellant testified to were "just unbelievable" and that Appellant "lied."

■ As a general rule, evidence explaining evidence previously introduced or showing that the inference arising or sought to be drawn therefrom is not warranted, is admissible. *State v. Ford,* 639 S.W.2d 573, 576 (Mo.1982). This rule is especially applicable where accused seeks to explain incriminating evidence introduced by the State. *Id. See* 2 John Henry Wigmore, Evidence § 276(4)(e)(1979) (A party may rebut adverse inferences from his conduct by evidence indicating it to be consistent with reasons other than consciousness of guilt); 31A C.J.S. *Evidence* § 163 (1964) ("Facts may be admissible ... which diminish the force of unfavorable facts shown by the opposing party").

Courts have acknowledged a defendant's right to explain certain actions, such as: failing to call the police, *State v. Martin,* 755 S.W.2d 337, 340 (Mo.App.1988) (defendant did not think victim was seriously injured); fleeing from the scene, *State v. Morris,* 585 S.W.2d 231, 234 (Mo.App.1979) (defendant was scared probation would be revoked); resisting arrest, *State v. Campbell,* 533 S.W.2d 671, 676–677 (Mo.App.1976) (police had informed defendant he would not be arrested, causing defendant to be surprised and fearful when police attempted to arrest him); escaping from jail, *State v. Medley,* 588 S.W.2d 55, 59 (Mo.App.1979); and signing a false name to a hotel register, *State v. Hamilton,* 310 S.W.2d 906, 907 (Mo.1958).

■ We conclude that evidence of Appellant's intoxication was relevant, not as showing a lack of mental state but to explain his conduct. It is not relevant for, and was not used in establishing his mental state, but to rebut inferences regarding that mental state. Evidence of Appellant's intoxication does, in that respect, relate to his mental state, not to show a lack of the necessary mental state, but to attempt to explain conduct that might otherwise be significant regarding his mental state. We also conclude that in order to evaluate the credibility of the Appellant, the jury should have been allowed to be fully informed as to the circumstances of the evening and Appellant's condition.

■ Evidence of Appellant's intoxication should have been allowed for the limited purposes sought and discussed above. As it was not allowed, and the State was able to argue inferences from Appellant's conduct that may have been rebutted, the exclusion may have prejudiced Appellant. *Campbell,* 533 S.W.2d at 676–677; *Hamilton,* 310 S.W.2d at 908. Because of the exclusion, Appellant is entitled to a new trial in his appeal from the conviction. The granting of a new trial makes Appellant's appeal from the denial of his Rule 29.15 motion moot.

The judgment appealed from in No. 18754 is reversed and the cause remanded for a new trial. Appeal No. 20395 is dismissed as moot.

BARNEY, P.J., concurring.

GARRISON, J., dissenting.

GARRISON, Judge, dissenting.

I respectfully dissent. The majority opinion reverses the conviction on the basis of Appellant's first point relied on. That point alleges that the trial court erred in granting the State's motion in limine by which it sought to exclude evidence of Appellant's intoxication. A motion in limine, however, in and of itself, preserves nothing for appeal. *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992). Ordinarily, therefore, a point relied on which refers only to a ruling on a motion in limine, such as the point here, is fatally defective. *State v. Rodgers,* 899 S.W.2d 909, 911 (Mo.App. S.D.1995).

Additionally, a ruling on a motion in limine is interlocutory and subject to change during the course of the trial. *Id.* The proponent of evidence must attempt to present the excluded evidence at trial, and if an objection is then sustained, the proponent must make an offer of proof in order to preserve the matter for appellate review. *State v. Purlee,* 839 S.W.2d at 592; *State v. Gateley,* 907 S.W.2d

212, 223 (Mo.App. S.D.1995). In the instant case, the State's motion in limine was made prior to John Lacey being called as a witness. After the trial court sustained the motion, Appellant's counsel made what he characterized an offer of proof. It was narrative in form and consisted of counsel's statement that, if permitted to do so, Mr. Lacey would testify that at approximately nine o'clock on the evening of the victim's death, he observed the victim and Appellant in an intoxicated condition. Appellant's counsel also stated that if Appellant decided to take the stand, he would testify, if permitted to do so, that he drank from six o'clock that evening until the time of the "accident," and that he was intoxicated.

Counsel informed the court that they were not offering the intoxication evidence to show that Appellant was incapable of having a knowing state of mind, but merely to explain his conduct after the "accident." He said, "We're still contending that what he did, it was, the death was the result of an accident. We're not saying that his intoxication precluded him from acting knowingly."

Assuming that this was an appropriate offer of proof,[1] there was no indication that Appellant, if permitted to do so, would have testified that his drinking had any effect on his conduct following the victim's death. Rather, his counsel informed the trial court that if he were permitted to show Appellant's intoxication, he would then argue that this affected Appellant's conduct following the death.

Appellant's counsel explained that he would argue that the intoxication was the reason Appellant did not leave the premises when the victim made sexual advances, why he did not call an ambulance for the victim, why he did not call the police until much later, why he would have been holding the knife as he was when the victim fell against it, why he was unable to explain the injury to the dog, and his choice of words when he later gave a statement to the police.

No attempt was made during Appellant's testimony to present evidence of intoxication.

He did testify, however, that when the incident occurred, he *was* in the process of leaving when the victim grabbed his shoulder, causing Appellant to turn and kick the victim; that he thought about calling an ambulance but did not because the victim died very quickly and it would have done no good; that the reason he didn't call the police sooner was because he was afraid he would be accused of murder; he explained how the incident occurred; and he testified that he had difficulty expressing himself because he was tired and was despondent over the death. He was unable to explain how the blade of the knife got into the dog. In summary, by his testimony, Appellant explained his actions to the jury. Except for the incident involving the dog, Appellant's testimony indicated a thorough memory of his conduct and the events following the stabbing. He made no attempt to present evidence that intoxication affected that conduct.

Based on this record, I do not believe that Appellant preserved this issue for appellate review, either in the trial court or in his point relied on presented here. Under the circumstances of this case, I do not believe Appellant is entitled to relief on his direct appeal. This would be true even if we were to grant a plain error review. Pursuant to Rule 30.20, we are entitled to consider plain errors affecting substantial rights "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Without indicating whether this case would otherwise present one of the "rare situations" referred to in *State v. Erwin,* 848 S.W.2d 476, 482 (Mo.banc), *cert. denied,* 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993), where evidence of intoxication is relevant on some issue other than Appellant's state of mind, I do not believe that plain error has been demonstrated in this case. I would affirm the conviction.

---

1. An offer of proof must demonstrate the testimony's relevance, must be specific, and must be definite. *State v. Jones,* 919 S.W.2d 12, 14 (Mo. App. E.D.1996). The preferred procedure is to put the witness on the stand and elicit the testimony out of the hearing of the jury. *Id.* A narrative by counsel may be sufficient when it is clear that both the trial court and counsel know exactly what the proposed testimony would be. *Id.*